Please the court, Denise Fjordek on behalf of Dr. Mazur-Hart, the superintendent of the Oregon State Hospital. I'd like to use my time this morning to focus on the two issues that we believe are both the strongest issues for us and the most troubling aspects of what the district court did and those two are proving that there had in fact been some denial of access to the courts that would provide a remedy and the other is whether the district court erred in the remedy that it imposed. With regard to the issue of whether a constitutional denial was shown, the record below indicated that the Oregon State Hospital has about 700 patients. The plaintiffs relied upon evidence regarding two of those patients, Mr. McCormick and Mr. Rennie. With regard to Mr. McCormick, the evidence was that he wished to do research on whether he could be transferred to an institution, presumably a state hospital, in another state and for that purpose he needed federal cases. With regard to Mr. Rennie, his claims were two-fold. One was that his urine was being tested and he did not he was being denied access to the telephone other than to call his lawyer. Our position is that neither of those claims presents on its face an actionable or a non-frivolous claim under Section 1983. Now, it may be that Mr. Rennie would have difficulty presenting a complaint to raise those issues, but in this case, Mr. Rennie and Mr. McCormick were represented by counsel. Both of them raised claims that might, I suppose, support a conclusion that their right of It's not sufficient in terms of Lewis v. Casey because the court makes clear in that case, at least the majority opinion does, that the person has to be presenting a non-frivolous legal claim. With regard to, well, let me back up then. With regard to Mr. McCormick, I know of no authority and we've never been cited to any been either civilly committed or found guilty except for insanity in Oregon to be transferred to another state. We've never been pointed to any legal basis. The fact that it's not frivolous doesn't, that's not, there's no authority once it's made frivolous. Not necessarily. On the other hand, the fact that there's absolutely no authority for it and that none has ever been suggested would suggest that, in fact, there is no authority for that. With regard to Mr. Rennie, I would suggest, Your Honor, that that particular claim is frivolous on what authority would someone who is hospitalized, in effect, force another state to take them or, for that matter, force this state to let them go. Certainly, with regard to prison inmates, those kinds of things are commonly done by agreement between the states, but the proposition that that could be forced in some fashion, I would submit it's frivolous on its face. With regard to Mr. Well, and that is part of the problem. The plaintiffs had the burden of proving that they had a non-frivolous legal claim to make. They did not do that. They proved that they had a claim they desired to make. They never proved that it was a non-frivolous legal claim. That is not the case. Mr. McCormick may not have had access as a pro se plaintiff, but he certainly had a lawyer in this case, and the lawyers that he had in this case had the burden of proving their case. Part of that burden was showing that he had a non-frivolous claim to pursue, and you don't do that merely by showing that he has something he'd like to pursue. But how does something totally bizarre happen? Because now that he's a lawyer, the lawyer can bring the case. The lawyer has access to federal cases, and the whole thing goes up in smoke, and that means nobody else is political. I would submit that that's not quite true. He has a lawyer in this case, and he has a burden of proof in this case. That doesn't mean that Mr. Neal or the Oregon Advocacy Center have agreed to represent Mr. McCormick on any other case he might want to bring. On the other hand, in this case, they do have a burden of proof, and that burden is to show a non-frivolous legal claim, and we would submit they've not done that. The same is true with regard to Mr. Rennie. We have basically the bare allegation that I can't use the phone except to call my lawyer, and they're making me undergo urinalysis. Those two claims, just stated boldly like that, do not state a non-frivolous claim for federal relief. There's just not enough there, and that was never amplified such that the district court could have made a determination that, in fact, these people had non-frivolous claims that they could pursue. And these two people were the only folks that were brought forward as people who had claims that had somehow been denied or thwarted as a result of the alleged inadequacies of the law library. And that's important to my second point, which is the remedy. What Judge Panner did, in essence, is he assumed that, without proof, that the claims that these two people wanted to bring were non-frivolous federal claims. He further assumed, without proof, that there must be other people at the hospital who wanted to bring such claims, and that those would be non-frivolous federal claims. There's absolutely no evidence on that issue. There's no evidence that there's anyone else in Mr. McCormick's position. There's no evidence that there is anyone else in Mr. Rennie's position that is not able to do his own research, but having a federal claim that they want to pursue. And so, essentially, what the court has done here is to impose a rather strong remedy without any factual basis to underlie that. We would suggest that, under Lewis v. Casey, that is clearly an error. That case was similar in that, as I recall, there were two underlying violations, and the court said that that is simply inadequate to support system-wide relief. And system- wide relief, the problem was that they seemed to assume that each person was entitled to relief, system-wide relief, for the particular problem that they presented, but not for other problems. So, for example, there were people who were illiterate, and they were, I forget, there were two people who turned out to be able to solve their particular problem. In other words, neither of them is asking for relief that wouldn't solve their particular problem. I would submit that it's not, and here's why. What the court emphasizes in Lewis v. Casey is that so long as the access that is provided is adequate, it is up to the states to determine how to do that. And what the judge did here was to say that you must both keep the federal cases in the library and also provide legal assistance of some kind, which has devolved into actually hiring a lawyer to have, for example, taken the option of saying, well, it's too expensive to keep up the federal case law, and we'll have somebody there, so we'll go back to the paging system of Mr. McCormick, if you need a copy of something, ask for it, and it will be brought to you. That might very well be a less expensive method of accomplishing the same thing, but because of the breadth of the remedy that the district court imposed, the opportunity to do those kind of creative solutions was denied to the state. As the court states in both Bounds and in Lewis v. Casey, there may very well be more than one way to accomplish this, and particularly in tough budgetary times, we believe that the discretion should lie, obviously, within the bounds of what is constitutionally required. The discretion as to exactly how to get there should lie with the superintendent and not with the district court. Unless the court has further questions at this point, I'd like to reserve the balance of my time. Thank you. May it please the Court, I'm Spencer Neal on behalf of the plaintiffs. I believe the State has it wrong about what Judge Panner ordered. After we had the trial, he ordered the defendants to come up with a compliance plan. It was the State's burden to come up, as the Supreme Court has directed, with a remedy, and the State chose, instead of rehiring the law students who in the past have provided copies of federal cases to the State patients, that they would provide an attorney would come in. First, they developed this library. They had books in it. They bought a computer CD-ROM system so people could access the state. A fairly expensive way to go, but maybe that was cheaper than hiring law students as they had in the past. So, contrary to what the State has said, in fact, Judge Panner offered the State the opportunity to come up with a solution, and that's what the State did. Mr. Rene has autism, and he can't even fill out simple forms without assistance, and the record reflects that. I believe that his claim about being forced to take urinalysis exams is, in fact, a legal claim, as well as his claim about him being kept from making phone calls. In fact, there's a Ninth Circuit case, Halverson v. Baird, that I did that established that right in this circuit. Mr. McCormick's claim, I don't know if there's legal support for him, but I can see fashioning a legal argument that would require the State to do that. I gather your opponent's argument is that you have to actually demonstrate that each claim has some validity. Well, that's the problem. No one has presented the standards for establishing what a non-frivolous claim is. Well, I assume, just as I have just now, I can believe that I can, with a straight face, fashion an argument on behalf of Mr. McCormick that he has a right to be transferred from the State of Oregon to another State. One of his complaints, for example, is that he believes, and it's in his record, that he has post-traumatic stress disorder, and that he says that he's not getting a relief for that, any treatment at all. He just sits in his room all day long. They have no way to deal with that. In fact, I know from my own clients that there is a treatment regimen for that particular disorder. If his claim is, if I can't get that claim here at the Oregon State Hospital, you have to transfer me to someplace where I can get that, or you can perhaps give me that treatment here. So fashioned that way, or stated that way, I believe that he stated a non-frivolous legal claim. And it's clear that Mr. René has gotten non-frivolous legal claims, and the law is pretty established in that area. The problem when you look at these things is the State's asking these mental patients who are mentally ill and have mental retardation and all kinds of mental handicaps to act as a lawyer for themselves and come up with these things. Now, the ultimate way that the State agreed to deal with the people who have severe mental disabilities is to hire a lawyer to come in on a weekly basis to screen these claims and help them file lawsuits. As to the remedy, this is the problem. Patients will come in and present themselves to somebody and say, I have a complaint, but I'm not going to tell you the person on the ward against whom I have the complaint. I need to talk to somebody else about filing a lawsuit. And I think Judge Panner did what all he could do. I didn't ask him to hire a lawyer for everybody, or provide law-abiding access to everybody. I asked him to do something so these people could have access. And he came up with the result that we have here. He said, State, figure it out. And State said, well, this is what we're going to do. We're going to hire a lawyer to screen people on a weekly basis. And if that lawyer feels that you have Barrett in your case, he will help you file a lawsuit. And you'll be in federal court. And then once we get in federal court, at least it does in this district, the law clerks then screen for non-frivolous cases, and you proceed from there. I just have a question about the remedy. I gathered that the State was originally asking for a remedy. And then came in with, at some point, I guess before actually getting the case, they came in with C.P. Ross. And then did the judge, did the lawyer coming in, was something the State came up with? That's correct, Your Honor. And then the judge simply essentially wrote into his order what the State had come forward with. That's right. I don't know, Your Honor. I really don't. Now, they could make an argument that they don't have to have anything except a lawyer coming in there to screen the claims, and they don't need to have a law library as well. But they've chosen to keep that. He just said, and actually his opinion says, his order says, is that they must have access to the text of federal appellate decisions. So again, they could have just had the lawyer photocopy cases for the prisoners or the patients who wanted to see them on his weekly visits. I will also point out that Oregon is unique, as far as I know. It has a statute that provides, it's ORS 426-385, and it says that people who are committed to the State hospital have a right to exercise all civil rights in the same manner and with the same effect as one not admitted to the facility. Now, Joe Citizen on the street, if he wants to file a lawsuit, if he wants to act as his own lawyer, can go down to the courthouse and read the law books and file his own case. And I believe this statute has established a protected liberty interest on behalf of the State patients that's protected by the 14th Amendment that allows people like Mr. McCormick to go forward and represent themselves as if you were on the streets. Is there any questions? Very quickly, I'd like to correct what Mr. Neal said about what the judge ordered. It is clear from the court's order that he did leave it to the discretion of the hospital as to how they would provide access to legally trained persons. In other words, whether they would, for example, hire law clerks versus hire a lawyer. We elected to hire a lawyer because one of the reasons why we got rid of the law clerks to begin with was a concern about unauthorized practice of law and whether having unsupervised law clerks on the State payroll effectively practicing law was an appropriate thing. And so he left it to our discretion to that extent. But he also ordered us, his order does say to provide patients with access to the test. Our understanding from what's been voiced to us is that what we have been ordered to do is to continue to provide the library as it currently exists, i.e. to keep up that subscription and make sure that the federal cases are covered. And that those cases are available in the library, not simply by a paging system. Judge Schroeder, I think, asked, why is the State complaining now? We're complaining because we believe that there's no proof that anyone's constitutional rights have been violated. And yet we've had to take funds that normally would have been used to pay mental health staff to hire a lawyer. Without any proof that there is anyone that was being actually harmed, no actual injury to anyone at the hospital. We believe that that's inappropriate and unjustified under the proof that we have here. We are in the business of operating a hospital. We should not be forced by the federal courts to put our resources into hiring legal staff rather than mental health staff. Unless the court has questions, that's all I have.
judges: Schroeder, Hug, Berzon